LEGAL DEPARTMENT

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
NATIONAL OFFICE
125 BROAD STREET,
18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2500
F/212.549.2651
WWW.ACLU.ORG

OFFICERS AND DIRECTORS
SUSAN N. HERMAN
PRESIDENT

ANTHONY D. ROMERO
EXECUTIVE DIRECTOR

April 7, 2011

Honorable Edward R. Korman
United States District Judge
United States District Court
 for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Abidor, et al. v. Napolitano, et al.*, CV-10-4059
               (Korman, J.) (Azrack, M.J.)

Dear Judge Korman:

      Plaintiffs write to address the Second Circuit's recent decision in *Amnesty International v. Clapper*, No. 09-4112, 2011 WL 941524 (2d Cir. Mar. 21, 2011), decided after plaintiffs submitted their opposition brief and discussed by defendants in their reply. Plaintiffs also write in response to defendants' letter dated March 31, 2011, discussing the Ninth Circuit's decision in *United States v. Cotterman*, No. 09-10139, 2011 WL 1137302 (9th Cir. Mar. 30, 2011).

      1.     *Amnesty International v. Clapper*

      The Second Circuit's decision in *Amnesty International v. Clapper* makes it even more clear that defendants' argument that plaintiffs lack standing is not tenable. The Second Circuit held that attorneys, journalists, and others had standing to bring a facial challenge to the constitutionality of a section of an electronic surveillance statute. Slip op. at 2. The section "creates new procedures for authorizing government electronic surveillance targeting non-United States persons outside the United States for purposes of collecting foreign intelligence." *Id.* at 4. The *Amnesty* plaintiffs, whose work requires them to communicate regularly with individuals they believe the government is likely to monitor pursuant to the procedures, argued that they had standing to challenge the section because the procedures "cause them to fear that their communications will be monitored, and thus force them to undertake costly and burdensome measures to protect the confidentiality of international communications necessary to carrying out their job." *Id.* at 4, 15. The Second Circuit held, "[b]ecause standing may be based on a reasonable fear of future injury and costs incurred to avoid that injury, and the plaintiffs

1

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

have established that they have a reasonable fear of injury and have incurred costs to avoid it, we agree that they have standing." *Id.* at 4-5.

Given that the plaintiffs in *Amnesty* have standing, then surely the plaintiffs in this case do as well. In *Amnesty*, the Second Circuit found standing despite a lack of evidence that any of the plaintiffs had in fact been subject to surveillance under the new statute. In contrast, the plaintiffs in this case have concrete evidence that they have already been subjected to the challenged policies. Moreover, like the plaintiffs in *Amnesty*, the plaintiffs in this case reasonably fear future injury (the suspicionless search and detention of their electronic devices), and have incurred costs to avoid that injury (including, but not limited to, self-censoring what they download onto their computers, deleting certain materials before traveling, refraining from taking notes or recordings of certain meetings while abroad, warning interview subjects that their information may fall into the government's hands, and traveling by car rather than by train to avoid being stranded at the border).

In addition to its broad holding, the Second Circuit's specific discussion of *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), bears special mention because defendants in this case relied heavily on *Lyons* in their Memorandum of Law in Support of Motion to Dismiss. In *Amnesty*, because the plaintiffs were challenging an official government policy, the Second Circuit rejected an argument that *Lyons* precluded standing. Slip op. at 38-39. It wrote, "[i]t is significant that the injury that the plaintiffs fear results from conduct that is authorized by statute. This case is not like *Lyons*, where the plaintiff feared injury from officers who would have been acting outside the law, making the injury less likely to occur. Here, the fact that the government has authorized the potentially harmful conduct means that the plaintiffs can reasonably assume that government officials will actually engage in that conduct by carrying out the authorized surveillance." *Id*.

As in *Amnesty*, the claims in this case are not barred by *Lyons* because plaintiffs are challenging officially authorized conduct. Defendants acknowledge in their Reply that under *Amnesty*, the existence of a policy helps support standing, but contend that plaintiffs have nevertheless failed to demonstrate standing because they "are simply among the hundreds of million people who cross the border into the United States each year . . . ." Reply Br. at 3. Yet just as the plaintiffs in *Amnesty* demonstrated standing by showing that they communicated with certain sorts of individuals abroad and that there was a statute allowing the monitoring of such communications, slip. op. at 38-43, plaintiffs in this case have alleged that they are *frequent* international travelers who regularly cross the border with electronic devices, and that there is a policy allowing the search of electronic devices without suspicion. *Amnesty* demonstrates why the facts plaintiffs allege in their complaint are sufficient to confer standing.

2

2.   *United States v. Cotterman*

In *United States v. Cotterman*, the Ninth Circuit addressed whether the government violated Harold Cotterman's Fourth Amendment rights by seizing his electronic devices at the border absent suspicion and transporting them to a laboratory 170 miles away to conduct a forensic search, a process that delayed commencement of the search by two days. Slip op. at 4209-10. When Mr. Cotterman presented himself at the port of entry, he was flagged for further inspection because of his prior convictions for sexual offenses against children and his frequent international travel. *Id.* at 4211.

A divided panel rejected Mr. Cotterman's Fourth Amendment claims. The majority opinion took as a given that the government has the authority to search the contents of travelers' electronic devices absent reasonable suspicion. While this is the law in the Ninth Circuit, *see United States v. Arnold*, 533 F.3d 1003 (9th Cir. 2008), the question is open in the Second Circuit. Plaintiffs in this case explain in their opposition brief why searches of the contents of electronic devices are so invasive that they trigger a reasonable suspicion requirement. Pls.' Br. at 19-26, 30-35. Moreover, the *Cotterman* majority concluded, in a footnote, that the power to search electronic devices absent reasonable suspicion includes the power to seize those devices absent suspicion. Slip op. at 4219 n.9. This does not follow. Plaintiffs have already explained that seizures implicate distinct Fourth Amendment interests; requiring agents to demonstrate reasonable suspicion to seize an electronic device and continue searching it after a traveler has left the border places an important check on inherently invasive electronic device searches. Pls.' Br. at 27.

Given its views on these two questions, the majority opinion was primarily devoted to discussing whether the mere fact that the devices were transported 170 miles was sufficient to trigger heightened scrutiny. Slip. op. at 4219-20 ("The sticking point is whether the inherent power of the Government to subject incoming travelers to inspection before entry also permits the Government to transport property not yet cleared for entry away from the border to complete its search."). The majority concluded that it was not. *Id.* at 4220. The *Cotterman* majority then analyzed whether the manner of the search was particularly offensive. *Id.* at 4225-26. Taking pains to caution that "the line we draw stops far short of 'anything goes' at the border," *id.* at 4210, the court analyzed whether the two-day delay "was reasonably related in scope to the circumstances that justified the initial detention at the border," *id.* at 4231-32. After reviewing the extenuating circumstances, the majority held that the delay was not so egregious as to render the search unreasonable. *Id.* The panel's decision drew a dissent. The dissent rightly pointed out that reviewing the length of detention, without more, places no meaningful restraint on the

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

government.  *Id.* at 4238.  This is because the government "expressly seeks to use its border search power to uncover evidence of crimes unrelated to contraband smuggling or national security."  *Id.* at n.5.  The consequence is that every bit of data on a computer is potentially relevant to the government.  As a prominent academic has noted, "analysis of a computer hard drive takes as much time as the analyst has to give it."  Orin S. Kerr, *Searches and Seizures in a Digital World*, 119 Harv. L. Rev. 531, 544 (2005) (quoted in dissent at 4238 n.6).  Therefore, "[i]n a search designed to fully allay the Government's concerns, the scope of the search will be determined by the government's desire to be thorough, and the length of the seizure by the government's convenience."  Dissent, slip op. at 4238.

This Court is not bound by, and should not follow, the Ninth Circuit's decision in *Cotterman*.  The majority's analysis neither mentions nor grapples with the intrusive nature of searches of electronic devices.  As the dissent explains, "computers store libraries worth of personal information, including substantial amounts of data that the user never intended to save and of which he is likely completely unaware."  Slip op. at 4236.  Thus, the dissent would have concluded that the Fourth Amendment was violated both because "authorizing a generalized computer forensic search (untethered to any particularized suspicion) permits the Government to engage in the type of generalized fishing expeditions that the Fourth Amendment is designed to prevent," and because "seizing one's personal property deprives the individual of his valid possessory interest in his property."  *Id.* at 4234-35.

Because *Amnesty* supports plaintiffs' argument that they have standing and *Cotterman* does nothing to undermine their position on the merits, and for the reasons stated in plaintiffs' opposition brief, this Court should deny defendants' motion to dismiss.

Respectfully submitted,

__/s/_____
Catherine Crump
Hina Shamsi
Benjamin T. Siracusa Hillman
American Civil Liberties Union
    Foundation
125 Broad Street, 17th Floor
New York, New York 10004
(212) 549-2500

Michael Price
National Association of Criminal Defense
    Lawyers

1660 L Street NW, 12th Floor
Washington, D.C. 20036
(202) 872-8600

Christopher Dunn
Melissa Goodman
Arthur Eisenberg
New York Civil Liberties Union
    Foundation
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION