## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| _____ | ) | |
| PASCAL ABIDOR, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. |
| | ) | 1:10-cv-04059 (ERK) |
| v. | ) | |
| | ) | (Korman, J.) |
| JEH JOHNSON*, et al.*, | ) | (Azrack, M.J.) |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## PLAINTIFF'S MEMORANDUM SUPPORTING
## CONTINUED SEALING OF RECORDS

Plaintiff Pascal Abidor submits this memorandum in response to the Court's September 2, 2015, order concerning the need for continued sealing of certain records filed in this case. ECF No. 74; *see also* ECF No. 73 (parties' joint motion to seal). The Court retains jurisdiction to unseal records on its docket even though all claims in the case have been dismissed. ECF No. 74, at 1; *accord Gambale v. Deutsche Bank AG*, 377 F.3d 133, 141 (2d Cir. 2004). That power serves an important function in ensuring public access to judicial records when such access is justified. Here, however, continued sealing is appropriate because Plaintiff's significant privacy interest outweighs the minimal presumption of public access to the records at issue. It would be perverse indeed if the result of a person's motion to expunge *private* files obtained through a government search of his laptop computer and now memorialized in a secure government database was the *public* dissemination of those files. That outcome was never contemplated by the parties in advancing or defending any of the claims in this case, and it would create a powerful disincentive against future plaintiffs bringing Fourth Amendment claims.

1

1.      At issue are portions of records containing the government's description of the files found on Plaintiff's laptop during the government's searches of that device. Partially redacted versions of those records were filed by the government under seal upon the order of this Court. *See* Order (Apr. 21, 2014); ECF No. 55 (sealed filing). Even assuming that the sealed filing is a judicial document to which the presumption of a common law right of access attaches, this Court must engage in a two-step analysis to determine whether unsealing is justified.[1] *See United States v. Erie County*, 763 F.3d 235, 239 (2d Cir. 2014). First, the Court must determine the weight of the presumption of access. *Id.* (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)). "The weight to be given to the presumption of access is 'governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Id.* (quoting *United States v. Amodeo,* 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*")). Second, "after determining the weight of the presumption of access, the court must balance competing considerations against [disclosure]." *Id.* (quoting *Lugosch,* 435 F.3d at 120) (alteration in original). "Such countervailing factors include . . . 'the privacy interests of those resisting disclosure.'" *Lugosch*, 435 F.3d at 120 (quoting *Amodeo II*, 71 F.3d at 1050); *accord United States v. Amodeo*, 44 F.3d

---

[1] No right of public access under the First Amendment, as opposed to the common law, attaches to the records at issue. Under the First Amendment "the public has a right to gain access to judicial records (1) that 'have historically been open to the press and general public,' and (2) where 'public access plays a significant positive role in the functioning of the particular process in question.'" *In re New York Times Co.*, 577 F.3d 401, 409 (2d Cir. 2009) (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004)). This is known as the "experience and logic" test. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 9 (1986). Here, both prongs of the test support continued sealing. But even if the First Amendment right of access applied, sealing the records at issue here would be narrowly tailored to safeguard the essential privacy values at issue. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006); *see also In re New York Times Co.*, 577 F.3d at 410 n.4 (describing situations where judicial records may be withheld from the public).

141, 145 (2d Cir. 1995) ("*Amodeo I*"). If "competing interests outweigh the presumption," continued sealing is justified. *Erie County*, 763 F.3d at 239.

2.      The weight of the presumption of access to the sealed records in this case is low. The records at issue were filed at the request of the Court in relation to the Court's consideration of Plaintiff's motion for reconsideration of the order dismissing the suit on standing grounds—specifically, Plaintiff sought to establish an ongoing interest in expungement of government documents describing the contents of files contained on his computer. The motion for reconsideration was subsequently withdrawn pursuant to a settlement agreement terminating all outstanding claims in this case, including Plaintiff's expungement claim. ECF No. 72. Although withdrawal of the motion does not divest the Court of the power to order records on the docket unsealed, it does affect the weight of the presumption of public access. Withdrawal of the claims means that the records played no role "in determining litigants' substantive rights," and will never play any such role. *Amodeo II*, 71 F.3d at 1049. "[T]he presumption of access to documents that do not serve as the basis for a substantive determination . . . is appreciably weaker." *United States v. Graham*, 257 F.3d 143, 151 (2d Cir. 2001).

The weight of the presumption of access to the records at issue is low in part because, with the exception of narrow redactions of private information on one page of one filing, *see* ECF No. 62, at 4, all of the briefs filed in this case are publicly available, including those concerning the motion for reconsideration and related request for expungement and return of property under Rule 41. *See, e.g.*, ECF Nos. 38, 39, 40, 45, 46, 54, 61, 64. The publicly available filings include the government's description of the source and nature of the sealed records, ECF No. 54, as well as Plaintiff's own description of some of the records as set forth in the Complaint. ECF No. 1, ¶¶ 32, 41, 51. The public has access to considerable information

3

shedding light on the issues raised in this case. Unsealing the records in question would do little to further illuminate the adjudicative process, and is unnecessary "for public monitoring of [the Court's] conduct." *Amodeo II*, 71 F.3d at 1049; *see also United States v. Hubbard*, 650 F.2d 293, 317–18 (D.C. Cir. 1980) (where ample other records shedding light on the judicial proceeding are public, "the purposes of public access are only modestly served by the trial judge's unsealing" of private records seized in a search).

Further, this is a situation "where filing with the court is unusual or is generally under seal," meaning that "tradition" indicates that a lower presumption of access applies. *Amodeo II*, 71 F.3d at 1050. Most cases involving requests for expungement involve arrest or conviction records, which are already in the public domain at the time of the motion. *See, e.g.*, *Doe v. Webster*, 606 F.2d 1226 (D.C. Cir. 1979). But in the few analogous cases involving motions to expunge government records reflecting the contents of a person's private communications, those records are generally filed under seal initially and would be maintained under seal even if expungement were denied. *See Lake v. Ehrlichman*, 723 F. Supp. 833, 834–35 (D.D.C. 1989) (ordering expungement of government wiretap logs, and discussing that the government's alternative proposal involved indefinite sealing of the logs); *Smith v. Nixon*, 664 F. Supp. 601, 604–05 (D.D.C. 1987) (same). Likewise, in cases involving Rule 41(g) motions for return of property seized during a computer search, the private digital files and records describing them are typically filed under seal with the court, if they are filed at all. *See, e.g.*, *United States v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085, 1115–16 (9th Cir. 2008) (addressing motion to unseal records concerning Rule 41(g) motion for return and destruction of private drug testing results seized from testing company's computers), *aff'd in part, rev'd in part on other grounds*,

4

621 F.3d 1162 (9th Cir. 2010) (en banc). For these reasons, the weight of the presumption of public access is relatively low.

3.       Plaintiff's privacy interest in the records is exceedingly high. Privacy interests justify narrow sealing of judicial records in a range of circumstances, and they should do so here. *See, e.g.*, *Anonymous v. Medco Health Solutions, Inc.*, 588 F. App'x 34, 35 (2d Cir. 2014) ("Redacted and sealed submissions are routinely used in cases involving sensitive medical information."); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008) (permitting sealing of a pseudonymous party's actual name when the "litigation involves matters that are 'highly sensitive and [of a] personal nature'"); *Amodeo II*, 71 F.3d at 1050–51 (directing consideration of "the privacy interest of the person resisting disclosure").

The records at issue contain descriptions of the contents of Plaintiff's personal laptop. As the Supreme Court has explained, "[w]ith all [mobile computing devices] contain and all they may reveal, they hold for many Americans 'the privacies of life.'" *Riley v. California*, 134 S. Ct. 2473, 2494–95 (2014) (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886)). In the pre-digital age, no traveler could have "lug[ged] around every piece of mail they have received for the past several months, every picture they have taken, or every book or article they have read— nor would they have any reason to attempt to do so." *Id.* at 2489. But now they can, and do, meaning that searches of laptops and other mobile electronic devices will "typically expose to the government far *more* than the most exhaustive search of a house." *Id.* at 2491; *accord United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) ("[A]dvances in technology and the centrality of computers in the lives of average people have rendered the computer hard drive akin to a residence in terms of the scope and quantity of private information it may contain."). The fact that the government conducted a search of Plaintiff's laptop at the border and retained a record of

the fruits of that search in several secure and confidential internal databases, *see* ECF No. 54, neither diminishes Plaintiff's privacy concerns nor divests him of his privacy interest vis-à-vis the rest of the world. *See* ECF No. 47, at ¶¶ 2–5 (Plaintiff's declaration describing privacy interest in contents of laptop). Maintaining the records under seal would "recognize[] the quintessential importance of maintaining some semblance of privacy within what are increasingly digitalized lives." *Malibu Media, LLC v. Doe No. 4*, No. 12 CIV. 2950 JPO, 2012 WL 5987854, at *5 (S.D.N.Y. Nov. 30, 2012).

The specific records at issue raise especially acute privacy concerns, which provide particularly compelling reasons for continued sealing. Three types of records described in the government's documentation of the laptop search are under consideration for unsealing: private emails between Plaintiff and his father; a photograph of Plaintiff himself; and photographs of other subjects or items taken or downloaded by Plaintiff. ECF No. 74, at 2. Plaintiff addresses his privacy interest in each of these categories of records in turn.

The Court proposes unsealing descriptions of two of Plaintiff's private emails. *See* ECF No. 55, at Abidor_000010–11, 000020. Emails, like private phone calls and posted letters, are entitled to the highest protections of privacy under the Constitution. *City of Ontario v. Quon*, 560 U.S. 746, 762–63 (2010) (implying that "a search of [a person's] personal e-mail account" would be just as intrusive as "a wiretap on his home phone line"); *United States v. Warshak*, 631 F.3d 266, 285–86 (6th Cir. 2010) ("Given the fundamental similarities between email and traditional forms of communication, it would defy common sense to afford emails lesser Fourth Amendment protection."). Disclosure of the email records would expose Plaintiff's private conversations with his father to public scrutiny. This intrusion into "family affairs," *Amodeo II*, 71 F.3d at 1051, would cause embarrassment to Plaintiff and place a strain on the filial

relationship. It would also cause reputational and professional harms, and would be prejudicial to Plaintiff's efforts to obtain academic employment. *See Comprehensive Drug Testing, Inc.*, 513 F.3d at 1116 (explaining that "extremely sensitive information" that "could adversely affect [individuals'] reputations" should weigh heavily on the "balancing of the interests at stake"). These excerpted descriptions, without the context or elucidation that the full messages would provide, are susceptible to embarrassing or damaging interpretation. Plaintiff's public reputation should not be defined by characterizations of isolated lines from two private emails sent in confidence to a family member more than nine years ago.

Also proposed for unsealing is a description of a photograph of Plaintiff. *See* ECF No. 55, at Abidor_000010, 000022, 000023. The privacy interest in photos depicting areas or activities not otherwise widely exposed to the public weighs in favor of continued sealing. *See United States v. Dimora*, 862 F. Supp. 2d 697, 710 (N.D. Ohio 2012). Like with the emails described above, release of this photo could cause dignitary harm and interfere with Plaintiff's professional reputation. The spare description of the photo, without context, leaves the public to draw the most damaging conclusions. "[E]mbarrassing conduct with no public ramifications" should not be forced into the public spotlight. *Amodeo II*, 71 F.3d at 1051.

Finally, the Court has proposed unsealing of descriptions of several images of other subjects or items. *See* ECF No. 55, at Abidor_000001–08, 000012–16, 000023. Although Plaintiff opposes unsealing of descriptions of these photos, their release would cause less acute privacy harm than the emails and photo discussed above. To the extent the descriptions overlap with Plaintiff's own publicly filed description of photos identified in the initial cursory border search of his laptop, the privacy interest in continued sealing is somewhat reduced. The Complaint explains that "[w]hile browsing through his laptop, Officer Tulip asked Mr. Abidor

7

about some personal pictures she found as well as pictures that Mr. Abidor had downloaded from

the Internet for research purposes . . . , including images of Hamas and Hezbollah rallies." ECF

No. 1, at ¶ 32. Several entries in the sealed records are similar to what is described in the

complaint. In light of the description provided in the complaint, the fact that these images were

downloaded from the Internet as part of Plaintiff's academic research, and the fact that they do

not depict or describe personal photographs or communications, their release would not cause the

same magnitude of harm as the records discussed above. Nonetheless, they are still the contents

of Plaintiff's private computer, and are entitled to privacy protection on that basis.

       4.     Also weighing in favor of continued sealing is that the records are covered by the

Privacy Act, 5 U.S.C. § 552a, as the government has explained. *See* ECF No. 50, at 2 ("[T]hese

records contain information subject to the Privacy Act."); ECF No. 54, at 5–8 & n.6 (explaining

that the sealed records are "records" in a "system of records" as defined by the Privacy Act). In

response to revelations of "the wrongful disclosure and use, in some cases, of personal files held

by Federal Agencies," S. Rep. No. 93-1183, at 1 (1974) *reprinted in* House and Senate Comms.

On Government Operations, 94th Cong., 2d Sess., Legislative History of the Privacy Act Of

1974: Source Book On Privacy 154, 154 (Joint Comm. Print 1976), Congress enacted the

Privacy Act in 1974 to "provide certain safeguards for an individual against an invasion of

personal privacy." PL 93–579, § 2(b), 88 Stat. 1896, 1896 (1974). President Gerald Ford, in his

signing statement, heralded the privacy protections introduced by the Act, calling the law "an

historic beginning" that "codif[ied] fundamental principles to safeguard personal privacy in the

collection and handling of recorded personal information by Federal agencies." Statement on the

Signing of the Privacy Act of 1974 (Jan. 1, 1975) *available at*

http://www.presidency.ucsb.edu/ws/?pid=4738. As courts have subsequently explained, the Act

"sets in place significant restrictions on the government's use of information it compiles about its citizens. In so doing, it serves to safeguard the public interest in informational privacy." *Cowsen-El v. U.S. Dep't of Justice*, 826 F. Supp. 532, 535 (D.D.C. 1992) (internal citation and quotation marks omitted).

The Privacy Act includes several enumerated exceptions to its general prohibition on release of private information without the consent of the person to whom it pertains. 5 U.S.C. § 552a(b). Among these, the Act authorizes disclosure "pursuant to the order of a court of competent jurisdiction." *Id.* § 552a(b)(11). But the Act is silent regarding the circumstances under which such an order may issue. As the Supreme Court has explained, even when a court has the power to order disclosure of Privacy Act–covered records, the fact that the Act covers those records "is certainly relevant in our consideration of the privacy interest affected by dissemination." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 767 (1989). The Act "support[s] [the] conclusion that a strong privacy interest inheres in the nondisclosure of compiled computerized information." *Id.* at 766. Accordingly, courts have taken the Privacy Act into account when deciding whether release of covered records is appropriate. *See, e.g.*, *Lohrenz v. Donnelly*, 187 F.R.D. 1, 8–9 (D.D.C. 1999) (ordering release of Privacy Act–covered records to defendant's counsel in discovery, but denying release to public because there was no "legitimate interest" in broader disclosure of Privacy Act–protected information).

5.      Even notwithstanding Plaintiff's considerable privacy interests, the Court's asserted justification for unsealing does not apply to the majority of the records at issue. The Court's order contemplates unsealing selected records "to the extent that they relate to the purpose of the challenged forensic search." ECF No. 74, at 1. This Court has concluded that the

9

forensic search was justified by reasonable suspicion because Customs and Border Protection (CBP) agents at the border "observed images of the rallies of designated terrorist groups (Hamas and Hezbollah) on [Plaintiff's] laptop computer." ECF No. 36, at 31. Only descriptions of *those* images are conceivably relevant to the purpose of the forensic search. Emails and photos subsequently discovered during the forensic search itself cannot retroactively provide justification for engaging in that search. *United States v. Swindle*, 407 F.3d 562, 568 (2d Cir. 2005) ("[R]easonable suspicion must arise before a search or seizure is actually effected."); *United States v. Como,* 340 F.2d 891, 893 (2d Cir. 1965) ("[I]t is an elementary maxim that a search, seizure or arrest cannot be retroactively justified by what is uncovered."). As explained by the government, only the first two pages of the sealed records reflect description of materials upon which reasonable suspicion could have been based. ECF No. 54, at 2 ("The material filed under seal consists of the following: (1) a sentence from CBP's TECS record of Plaintiff's border inspection (Abidor_000001), [and] (2) a sentence from an entry made by ICE in TECS (Abidor_000002) . . . ."). All of the information on subsequent pages (except for copies of the information appearing on the first two pages) apparently reflects the results of the forensic search itself. *Id.* at 2–3. It therefore sheds no light on the government's justification or purpose in conducting the challenged search.

6.     Plaintiff brought this suit to assert a Fourth Amendment right-of-privacy claim. Among the relief sought was expungement of records derived from the contents of his private computer, which reveal exceedingly private and highly sensitive information. Ordering public release of even a portion of those records is fundamentally incompatible with the judiciary's role in adjudicating a privacy claim, and will cause Plaintiff to "sustain[] the injury which by this litigation [he] seek[s] to avoid." *Roe v. Ingraham*, 364 F. Supp. 536, 541 n.7 (S.D.N.Y. 1973),

*rev'd on other grounds sub nom. Whalen v. Roe*, 429 U.S. 589 (1977).[2] This, in turn, would

"have a chilling effect upon a [person's] willingness to [bring privacy claims] in future cases." *In*

*re New York Times Co.*, 828 F.2d at 114 ("The court, in applying the balancing test mandated by

the First Amendment, should give added weight to . . . privacy interests where requiring

disclosure will have a potential chilling effect on future movants.").[3] "[I]t would be ironic indeed

if one who contests the lawfulness of a search and seizure were always required to acquiesce in a

substantial invasion of those interests simply to vindicate them." *Hubbard*, 650 F.2d at 322.

In holding that a plaintiff may sue using a pseudonym in order to safeguard privacy

interests, this Court has articulated principles that should guide resolution of the instant motion:

> Over a century ago, Samuel Warren and Louis Brandeis argued compellingly for
> the legal recognition of a personal right to privacy. They wrote that "modern
> enterprise and invention have, through invasions upon [an individual's] privacy,
> subjected him to mental pain and distress, far greater than could be inflicted by
> mere bodily injury." Warren & Brandeis, *The Right to Privacy,* 4 Harv. L. Rev.
> 193, 196 (1890). The modern invention of today includes access to court files by
> those surfing the Internet. The facts of this case provide no occasion for imposing
> such an invasion of privacy as the price for litigating a legitimate private
> complaint.

*EW v. New York Blood Ctr.*, 213 F.R.D. 108, 112–13 (E.D.N.Y. 2003) (Korman, C.J.) (alteration

in original). Unsealing the sensitive, private records at issue will place them within easy access

of any member of the public with an Internet connection, with predictable damage to Plaintiff's

---

[2] *See also NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958) (rejecting judicial rule that would require an individual to identify himself in order to assert his First Amendment rights because it "would result in nullification of the right at the very moment of its assertion"); *M.S. v. Wermers*, 557 F.2d 170, 176 (8th Cir. 1977) (rejecting requirement that minor plaintiff disclose her participation in the lawsuit to her parents where it would "substantially nullify the privacy right she seeks to vindicate").

[3] *Accord Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1065 (9th Cir. 2004) ("The chilling effect [that the discovery of immigration status of workers] could have on the bringing of civil rights actions unacceptably burdens the public interest."); *Avenne v. Rade Mgmt. Corp.*, No. 98 CIV 7123 (JFK), 2005 WL 1353985, at *2 (S.D.N.Y. June 8, 2005) ("[U]nsealing at this point might have a chilling effect on Receivers who file sealed documents with the Court.").

privacy. Maintaining the records under seal serves the well-recognized interest in protecting privacy, while not interfering with the public's right to "monitor[] the federal courts." *Erie County*, 763 F.3d at 239.

## CONCLUSION

Plaintiff respectfully requests that the full contents of the records at issue remain under seal. Alternatively, those records identified for possible unsealing that would cause the greatest privacy harm upon public release (*see* ECF No. 55, at Abidor_000010–11, 000020–23) should remain sealed. Should this Court order unsealing of any of the records at issue, Plaintiff respectfully requests that the Court stay its order pending Plaintiff's decision whether to appeal.


Dated: October 2, 2015                          Respectfully Submitted,

                                                /s/ Nathan Freed Wessler
                                                Nathan Freed Wessler
                                                Brian Hauss
                                                Hina Shamsi
                                                American Civil Liberties Union
                                                    Foundation
                                                125 Broad St., 18th Floor
                                                New York, NY 10004
                                                Phone: (212) 549-2500
                                                Fax: (212) 549-2583
                                                Email: nwessler@aclu.org

                                                Christopher Dunn
                                                Arthur Eisenberg
                                                New York Civil Liberties Union
                                                    Foundation
                                                125 Broad St., 19th Floor
                                                New York, NY 10004
                                                Phone: (212) 607-3300

                                                *Attorneys for Plaintiff Pascal Abidor*