UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

PASCAL ABIDOR, NATIONAL
ASSOCIATION OF CRIMINAL DEFENSE
LAWYERS, NATIONAL PRESS
PHOTOGRAPHERS ASSOCIATION,

                       Plaintiffs,

     – against –

JEH JOHNSON, R. GIL KERLIKOWSKE,
SARAH SALDANA,

                   Defendants.

**MEMORANDUM & ORDER**

10-CV-4059 (ERK)

KORMAN, J.:

     In the action underlying this matter, Pascal Abidor, the National Association of Criminal Defense Lawyers, and the National Press Photographers Association challenged the constitutionality of U.S. Immigration and Customs Enforcement and U.S. Customs and Border Patrol regulations authorizing agents to inspect any electronic devices that travelers seek to carry across an international border into the United States. As relevant here, Abidor alleged that his rights were violated by a forensic search of his computer—an exhaustive search of the hard drive— upon his entry into the United States from Canada and sought declaratory relief that such searches were unconstitutional, as well as injunctive relief against further such searches. Although the underlying cause of action has been dismissed, *Abidor v. Napolitano*, 990 F. Supp. 2d 260 (E.D.N.Y. 2013), the parties have submitted a joint motion to keep presently sealed documents under seal beyond the closing of the case.

## BACKGROUND

     Plaintiff Pascal Abidor was questioned by border patrol officers while his New York-bound train from Montreal was stopped at the Canadian border. A customs officer inspected Abidor's

customs declaration and U.S. passport.  Abidor told the border officer that he had briefly lived in Jordan and visited Lebanon in the previous year.  While Abidor had obtained visas to these two countries, they were not contained in his United States passport.  Instead, they were contained in a French passport also in Abidor's possession.  Abidor was instructed to bring his belongings to the café car for further inspection.  There, officers inspected Abidor's laptop, finding certain pictures Abidor had saved depicting rallies of Hamas and Hezbollah, both of which were designated by the State Department as terrorist organizations.  Abidor explained these pictures as being part of his Ph.D. research on the modern history of Shiites in Lebanon—an explanation that was not wholly persuasive in the case of Hamas, which is a terrorist organization neither composed of Shiites nor based in Lebanon.  The border officials then retained the laptop and an external drive for further inspection.  Both devices were returned by mail eleven days later with indications that they had been physically opened and that various files on the laptop and external drive had been viewed.  Plaintiffs' complaint alleged on information and belief that one or more agencies copied Abidor's laptop and external drive, transmitted the contents of both devices to other agencies, and retained copies.

Plaintiffs sought declaratory relief and an order enjoining defendants from enforcing their policies of searching, copying, and detaining electronic devices at the international border without reasonable suspicion.  I held that plaintiffs, including Abidor, failed to show the injury necessary to establish standing to obtain the relief that they sought, namely a declaratory judgment and injunctive relief based on the claim that the First and Fourth Amendments were violated by the policies of Customs and Border Protection and Immigration and Customs Enforcement that authorize agents to inspect any electronic devices that a traveler seeks to carry across an

international border into the United States.  *See generally Abidor v. Napolitano*, 990 F. Supp. 2d 260 (E.D.N.Y. 2013).

Separate and apart from the common injury alleged by each plaintiff for the purpose of establishing standing, which I need not rehearse here, Abidor alleged that he had standing for the additional reason that he sought expungement of information he believed DHS may have retained from his electronic devices.  The Second Circuit, he argued, has recognized that a demand for expungement provides a basis for standing.  The problem with this argument, I observed, was "that under the regulations he is entitled to have the materials destroyed.  Indeed, the Department of Justice attorney conceded at oral argument that the materials 'would have been destroyed but for the fact that cases had been filed,' and that they were being retained as potentially relevant to those cases.  Under these circumstances, the fact that Abidor [sought] expungement [did] not provide a basis to challenge a regulation which provides him with that remedy."  *Abidor*, 990 F. Supp. 2d at 275 (quoting Hr'g Tr. 32:4–9, July 8, 2011, ECF No. 25) (citing CBP Directive No. 3340–049 § 5.3.2.4 (Aug. 20, 2009)).

Plaintiffs then filed a motion for reconsideration arguing that, notwithstanding the Department of Justice attorney's announced intention to destroy any copies from Abidor's electronic devices, including data and files from those devices, the government intended to retain "records generated in connection with the search of [Abidor's] electronic devices." Defs.' Letter 1, Apr. 24, 2014, ECF No. 50.  Thus, they argued that Abidor had standing unless the government agreed to expunge "*all* information unlawfully obtained from [Abidor's] devices, including data extracted or information derived from the contents of his devices or images." Mem. Supp. Pls.' Mot. for Partial Recons. 1, ECF No. 38 attach. 1.

Thus, the dispute turned not on the destruction of the materials retained from his electronic devices. Rather, it involved records that simply described certain materials on those devices. So, for example, instead of retaining a photograph, the government made and proposed to retain a record, or a log, describing the photograph. I directed defendants to provide the records for my inspection because I thought it would be helpful to see the documents that formed the basis of the dispute, although Abidor's argument that he was entitled to have the records expunged was not dependent on the specific descriptions contained in the records. Unnumbered Docket Entry, Apr. 21, 2014. I reviewed the documents *in camera* at a motion hearing held on April 25, 2014. Because Abidor's lawyers had not yet seen the log describing the search of his computer, I ordered the government to give them copies of everything except for data that the Department of Justice attorney claimed would reveal law enforcement operations, methods, techniques, and procedures. Hr'g on Mot. Tr. 33:8–16, Apr. 25, 2014, ECF No. 52. The documents—redacted to exclude reference to everything but the materials found on Abidor's computer—were filed under seal via ECF on May 16, 2014. Redacted Docs. Filed Under Seal, ECF No. 55. In a subsequent telephone conference, I raised the issue whether the documents describing the material found on Abidor's electronic devices should remain sealed and ordered briefing on the subject. Min. Entry, July 23, 2014, ECF No. 66.

On September 11, 2014, before I issued a ruling on the pending motion for reconsideration, I received a joint letter advising me that settlement discussions were underway and seeking to extend the time at which briefing on the subject of the continued sealing of the records was due. Joint Mot. for Extension of Time to File Papers, ECF No. 69. Ultimately, after two additional extensions, plaintiffs withdrew their motion for reconsideration and all supplemental requests, including the motion for expungement of the records of the search. Notice of Withdrawal of Mot.

for Recons. & Converted Mot. for Expungement, ECF No. 72. The notice further provided that "[p]laintiffs will seek no further relief, either in this Court or on appeal, in connection with this case, except Plaintiff Pascal Abidor reserves his right to challenge any unsealing decision." *Id.* Concurrent with that notice, the parties jointly moved for those documents currently under seal to remain so. Joint Mot. Regarding Sealed Docs., ECF No. 73. The parties contend that this is proper because "the sealed materials [filed] are no longer relevant to a pending court dispute." *Id.* ¶ 7. I consider that motion now.

## ANALYSIS

Before addressing the legal standards in this matter, I pause briefly to rehearse the posture of this case. The parties here jointly move to maintain the records under seal; there has been no (nor is there the realistic possibility of) adjudication based on the records; and the records at issue were submitted at my request. Nevertheless, these circumstances are not determinative of my power to superintend the documents filed before me. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 141 (2d Cir. 2004) ("The court's supervisory power does not disappear because jurisdiction over the relevant controversy has been lost. The records and files are not in limbo. So long as they remain under the aegis of the court, they are superintended by the judges who have dominion over the court."). Thus, I retain jurisdiction and authority over the records at issue. I now turn to the law regarding public access to judicial documents.

### A.     Brief Overview of the Right of Access

There is both a common law and First Amendment right to public access of judicial documents. *United States v. Erie Cty., N.Y.*, 763 F.3d 235, 239 (2d Cir. 2014). This right, however, is not absolute. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). Rather, it falls within the "sound discretion of the trial court" to exercise "supervisory power over its own records and

files." *Id.* at 598–99. "The presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*").

The common law presumption of access applies generally to all judicial documents and can be overcome if it is outweighed by countervailing interests. Judge T.S. Ellis, III, *Sealing, Judicial Transparency and Judicial Independence*, 53 Vill. L. Rev. 939, 944 (2008). Courts considering the common law right of access follow a three-part analysis:

> First, the court must determine whether the documents are indeed judicial documents, to which the public has a presumptive right of access. Second, if the documents are judicial documents, the court must determine the weight of the presumption, that is, whether the presumption is an especially strong one that can be overcome only by extraordinary circumstances or whether the presumption is a low one that amounts to little more than a prediction of public access absent a countervailing reason or whether the presumption is somewhere in between. Third, once the weight of the presumption is determined, a court must balance competing considerations against it. Countervailing factors include, among others, the danger of impairing judicial efficiency and the privacy interests of those resisting disclosure.

*Stern v. Cosby*, 529 F. Supp. 2d 417, 420 (S.D.N.Y. 2007) (citations and internal quotation marks omitted); *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006) (same); *United States v. Graham*, 257 F.3d 143, 149–55 (2d Cir. 2001) (same).

The First Amendment right attaches where "'experience and logic' support making the document available to the public." *Erie Cty.*, 763 F.3d at 239. This "approach requires the court to consider both whether the documents 'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular process in question.'" *Lugosch*, 435 F.3d at 120 (quoting *Hartford Courant Co. v.*

*Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004)).  Where the right applies, a record may remain sealed only if specific findings demonstrate that closure is "essential to preserve higher values and is narrowly tailored to serve that interest."  *Erie Cty.*, 763 F.3d at 239 (quoting *Lugosch*, 435 F.3d at 120).

Under either source of the right to access, the burden is on the party opposing access to demonstrate the need for continued secrecy.  *Gambale*, 377 F.3d at 142.

**B.      Common Law Right of Access**

*1.      Judicial Documents*

The first step in analyzing whether documents are subject to the common law presumption of access is determining whether the records in question properly qualify as "judicial documents" that enjoy a presumption of public access.  *Stern*, 529 F. Supp. 2d at 420.  An item is properly designated a judicial document where it is "relevant to the performance of the judicial function and useful in the judicial process."  *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*").  Thus, documents exchanged by parties during discovery, but never filed with the court, are not judicial documents because they do not figure into the performance of Article III functions.  *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 621 F. Supp. 2d 55, 63 (S.D.N.Y. 2007).

The documents in question need not have been submitted into evidence to be deemed judicial documents.  *Graham*, 257 F.3d at 151–52.  Rather, the common law right applies "more generally to materials on which a court relied in determining the litigants' substantive rights."  *Id.* at 152 (internal quotation marks omitted).  In a later opinion, the Second Circuit clarified that a judge does not need to have explicitly relied on a particular item for it to be deemed a judicial document.  *Lugosch*, 435 F.3d at 122–23.  "After *Lugosch,* it appears that the test focuses not on

whether the document was actually used by the court but, rather, on the role the document was *intended* to play in the exercise of the court's Article III duties. If a party submitted the document as part of the process of adjudication, the presumption of public access accorded the document is entitled to great weight." *United States v. Sattar*, 471 F. Supp. 2d 380, 386 (S.D.N.Y. 2006) (emphasis added). The presumption of access remains even when the motion relying on the sealed documents is rendered moot before it has been decided. *Gambale*, 377 F.3d at 141–42; *Eagle Star Ins. Co. Ltd. v. Arrowood Indem. Co.*, No 13 CV 3410 (HB), 2013 WL 5322573, at *1–2 (S.D.N.Y. Sept. 23, 2013).

The documents in this case are judicial documents as conceived under the common law right of access. The records were the subject of a then-pending motion, and I asked to see them in the belief that they could provide some context for the claims asserted in the initial briefing on the motion to expunge. It is immaterial that I had no occasion to rely on the documents in reaching a decision or that the motion to expunge has been rendered moot by the parties' stipulation of dismissal with prejudice. *See Lugosch*, 435 F.3d at 121–23; *Gambale*, 377 F.3d at 141–42. As judicial documents, the records here are subject to a presumption of access.

   2.   *Weight of Presumption*

After ascertaining that an item is a judicial document subject to a presumption of access, it is necessary to determine the weight of the presumption. *Stern*, 529 F. Supp. 2d at 420. "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Amodeo II*, 71 F.3d at 1049. Those documents that formed the basis for an adjudication, were introduced as evidence at trial, and were cited by the judge as a basis for issuing a decision are entitled to the highest presumption of access, while those documents "that play no role in the

performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach." *Id.* at 1049–50; *see id.* at 1051–52 (finding weak presumption of access to reports filed by appointed court officer because report was not necessary for the exercise of Article III authority and was only requested to ensure that the court officer was appropriately fulfilling her appointment); *see also Graham*, 257 F.3d at 154 (finding strong presumption of access where material was primary basis court gave for detaining defendants prior to trial). Materials that implicate matters of public concern are entitled to a heavier presumption of access. *See Gambale*, 377 F.3d at 143–44; *Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.*, 487 F. Supp. 2d 374, 376 (S.D.N.Y. 2007).

"Courts have given various descriptions of the weight to be given to the presumption of access, ranging from an 'especially strong' presumption requiring 'extraordinary circumstances to justify restrictions,' to merely '*one* of the interests' that may bow before 'good reasons' to deny the requested access." *Amodeo II*, 71 F.3d at 1048 (citations omitted). The present case falls in the latter category. This is not a case where the log containing the description of the contents of Abidor's laptop formed the basis for a judicial decision. Indeed, neither party offered the document; it only became part of the record because I asked to see it *in camera* and then ordered that it be filed under seal. Moreover, the absence of a ruling on the motion to expunge, as to which the documents were submitted, weakens the presumption that attaches to them. On the other hand, the overall subject matter of this case is a matter of public concern—touching, as it does, on the protection of the homeland from acts of terrorism by those who enter the United States. *See* Yule Kim, Cong. Research Serv. RL34404, *Border Searches of Laptop Computers and Other Electronic Storage Devices* 13–14 (Nov. 16, 2009) (describing recent legislative proposals to limit border searches of electronic devices); Michael Chertoff, *Searches Are Legal, Essential,* USA Today, July

16, 2008, at A10.  Indeed, this case and the issues it raises have received attention in several articles published in the press.  *See, e.g.*, Susan Stellin, *District Judge Upholds Government's Right to Search Electronics at Border*, N.Y. Times, Jan. 1, 2014, at B3.

       *3.*     *Balancing Interests*

       "Once the weight of the presumption is determined, a court must balance competing considerations against it."  *Amodeo II*, 71 F.3d at 1050.  Among the factors that can overcome the presumption of access are: "(i) the danger of impairing law enforcement or judicial efficiency and (ii) the privacy interests of those resisting disclosure."  *Id.*  When considering an assertion of a right to privacy, a court should look to the extent to which the subject matter is traditionally considered private, the sensitivity of the information at issue, the intended use of the information, the reliability of the information, and the extent to which the party would have a fair opportunity to respond to accusations contained in the material.  *Id.* at 1051.  A party's issuance of a press release on the matter in question, as occurred after my initial ruling, Press Release, Decision Dismisses ACLU Lawsuit Challenging DHS Search Policy as Unconstitutional (Dec. 31, 2013), *available at* https://www.aclu.org/news/court-rules-no-suspicion-needed-laptop-searches-border, does not provide grounds to discount a privacy claim.  *Amodeo I*, 44 F.3d at 147.

       Abidor has asserted a broad privacy interest in keeping the material sealed, while neither the co-plaintiffs nor the government have asserted any interest at all.  Broadly speaking, there can be little question that Abidor has a significant privacy interest in the material stored on his personal laptop.  This specific interest, however, could be served by eliminating the material described in the records that is unrelated to the purpose of a forensic search.  Thus, Abidor's general privacy interests would require redaction of that irrelevant material including "intimate details about [his] life, such as his personal photos, a transcript of a chat with his girlfriend, copies of email

correspondence, class notes, journal articles, his tax returns, his graduate school transcript, and his resume." Compl. ¶ 51, ECF No. 1.  The issue here is whether redaction is also required of material relevant to the purposes of the search describing a handful of emails and photographs.

The principal argument Abidor raises is that he "brought this suit to assert a Fourth Amendment right-of-privacy claim," and that "[a]mong the relief sought was expungement of [the] records derived from the contents of his private computer, which reveal exceedingly private and highly sensitive information."  Pl.'s Mem. Supp. Continued Sealing of Records 10, ECF No. 77. Thus, "[o]rdering public release of even a portion of those records is fundamentally incompatible with the judiciary's role in adjudicating a privacy claim, and will cause Plaintiff to 'sustain[] the injury which by this litigation [he] seek[s] to avoid.'"  *Id.* (second, third, and fourth alterations in original) (quoting *Roe v. Ingraham*, 364 F. Supp. 536, 541 n.7 (S.D.N.Y. 1973)).  "This, in turn, would 'have a chilling effect upon a [person's] willingness to [bring privacy claims] in future cases.'"  *Id.* at 11 (alterations in original) (quoting *United States v. Biaggi (In re N.Y. Times Co.)*, 828 F.2d 110, 114 (2d Cir. 1987)).

The "chilling effect" argument overlooks the fact that the lawsuit was brought by Abidor, along with the National Association of Criminal Defense Lawyers and National Press Photographers Association, with the overriding purpose of preventing the Department of Homeland Security from undertaking searches without reasonable suspicion of laptop computers carried by those seeking to enter the United States.  Indeed, although not a party, the ACLU, which filed the lawsuit, is an organization that has its own agenda and seeks to shape law and policy through litigation.  Pascal Abidor, whom the complaint described as "a twenty-six-year-old U.S.-French dual citizen and a Ph.D. student at the Institute of Islamic Studies at McGill University in Montreal, Canada," Compl. ¶ 7, ECF No. 1, provided an apparently sympathetic named plaintiff

in a case seeking to create an exception to the border search doctrine that does not otherwise require any elevated level of suspicion.

Passing over the procedural hurdles to success in such an action, the extraordinarily limited disclosure at issue here would not deter the ACLU from filing an action for a declaratory judgment on behalf of a different named plaintiff on whose laptop nothing related to the purpose of the search was discovered. Nor would it discourage a *Bivens* action for damages on behalf of a sympathetic plaintiff in a case in which the search of a laptop computer did not reveal anything relating to the purpose of the search. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Moreover, we know from the decision of the Court of Appeals for the Ninth Circuit that, if the search had resulted in the discovery of evidence that led to a criminal prosecution, there would be every incentive for a defendant to challenge and obtain a ruling on the legality of the search—as the defendant successfully did in that case. *See United States v. Cotterman*, 709 F.3d 952 (9th Cir. 2013) (en banc). Nor would the other institutional plaintiffs be deterred from seeking relief in the future—assuming that they could each make the requisite showing of standing. *See Abidor*, 990 F. Supp. 2d at 270–77. This suggests that the argument that disclosure here "would 'have a chilling effect upon a [person's] willingness to [bring privacy claims] in future cases," Pl.'s Mem. Supp. Continued Sealing of Records 11, ECF No. 77 (alterations in original) (quoting *In re N.Y. Times Co.*, 828 F.2d at 114), is vastly overstated.

Moreover, contrary to the argument that the result of the forensic search "sheds no light on the government's justification or purpose in conducting the challenged search," *id.* at 10, the opposite is true. The result of that search demonstrates the need for exercising caution before rushing to place evidentiary hurdles in the way of searches designed to determine who enters the

United States and for what purpose they enter.[*]  Indeed, the result confirms the Ninth Circuit's observation that, "as a matter of commonsense and resources, it is only when reasonable suspicion is aroused that such searches typically take place."  *Cotterman*, 709 F.3d at 967 n.14.

There is, however, one argument Abidor makes that I find sympathetic and persuasive.  Specifically, Abidor argues that releasing the general descriptions of several emails and photographs "would also cause reputational and professional harms, and would be prejudicial to Plaintiff's efforts to obtain academic employment."  Pl.'s Mem. Supp. Continued Sealing of Records 7, ECF No. 77.  Moreover, he also argues that "[t]he spare description of the photo[s], without context, leaves the public to draw the most damaging conclusions."  *Id.*  The other documents contained in the description, however, do provide some context.  Nevertheless, because the weight of the presumption of common law access is particularly weak in the circumstances of this case, the policies underlying the presumption of public access would not be served by the additional release of the descriptions of the contents of documents found in a forensic search of Abidor's laptop.  The release of these descriptions, which would cause such substantial additional reputational harm to him, is not warranted.  *See Amodeo II*, 71 F.3d at 1051 ("The nature and degree of injury [to the person resisting disclosure] must also be weighed.").  This is particularly

---

[*]  The justification for a border search, which I discuss in some detail in my initial opinion, *see Abidor*, 990 F. Supp. 2d at 278–79, is far different from the justification for the search of a laptop or cellphone incident to an arrest, which the Supreme Court subsequently held requires probable cause and a warrant.  *Riley v. California*, 134 S. Ct. 2473, 2485, 2495 (2014).  The justification for a warrantless search incident to a lawful arrest is that it is necessary to disarm the defendant and prevent him or her from destroying evidence.  *Id.* at 2483–85.  Once the laptop or cellphone is removed from the person of the arrestee, those considerations are dissipated and can hardly be said to justify the warrantless invasion of privacy occasioned by the search of a laptop or cellphone.  *Id.* at 2484–86.  The purpose of a border search is not to prevent the destruction of evidence.  Instead, it is intended to determine who is entering the United States, for what purpose, and what they are bringing into the country.  Applying the holding in *Riley* in this context would significantly, if not totally, undermine these purposes.

so where, as here, the contents of the cursory search of his laptop (as distinguished from the forensic search) have already been released and the descriptions of the remaining documents played no role in any decision made in this case. Indeed, as I observed, the documents containing the descriptions at issue here were not submitted by either party, and Abidor's argument that he was entitled to have the records expunged did not turn on the specific descriptions contained in the records.

## C.  First Amendment Right of Access

There is some overlap between the considerations underlying the First Amendment and common law rights of access. *See United States v. Silver*, No. 15-CR-93 (VEC), 2016 WL 1572993, at *6 (S.D.N.Y. Apr. 14, 2016). Nevertheless, it is unnecessary to undertake a detailed analysis of the similarities and differences between the two, because the same result follows under the First Amendment right of access. As observed earlier, the First Amendment "approach requires the court to consider both whether the documents 'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular process in question.'" *Lugosch*, 435 F.3d at 120 (quoting *Hartford Courant*, 380 F.3d at 92). I begin by observing that, while the proceedings conducted here have been in public and have been the subject of media coverage, there has been no request by a member of the public or the press for the release of the descriptions at issue here. Moreover, it is hardly clear that "'experience and logic' support making [this] document available to the public." *Erie Cty.*, 763 F.3d at 239.

Records containing descriptions of the contents of a laptop seized pursuant to a search are not historically available to the public. The closest analogue may be found in Federal Rule of Criminal Procedure 41(f)(1)(D), which provides for the filing of a return describing the contents

of the evidence seized pursuant to a warrant. While the return is ultimately delivered to the clerk of the court for filing, Fed. R. Crim. P. 41(i), it need only contain a general description of an item that was seized, i.e., a laptop computer, and not a description of the contents of the computer, *see* Fed. R. Crim. P. 41(f)(1)(B). "This is consistent with practice in the 'paper world.' In circumstances where filing cabinets of documents are seized, routine practice is to list the storage devices, i.e., the cabinets, on the inventory, as opposed to making a document by document list of the contents." Fed. R. Crim. P. 41(f)(1) advisory committee's note to 2009 amendments. While the return—along with the other papers relating to the search warrant—may be sealed for a time if otherwise appropriate, when unsealed, this general description of the items seized is all that would be available to the public.

More significantly, as the government acknowledges, the descriptions at issue here are covered by the Privacy Act, 5 U.S.C. § 552a. Defs.' Resp. to Ct.'s Sept. 2 Order ¶ 1, ECF No. 76. While they may be released pursuant to court order, in making a decision to release such information, "the court must 'accord proper weight to the policies underlying . . . statutory protections, and . . . compare them with the factors supporting discovery in a particular lawsuit.'" *Lohrenz v. Donnelly*, 187 F.R.D. 1, 8 (D.D.C. 1999) (alterations in original) (quoting *Laxalt v. McClatchy*, 809 F.2d 885, 889 (D.C. Cir. 1987)). As Judge Lamberth observed, "[t]his analysis includes a balancing of 'the need for disclosure against potential harm to the subject of disclosure.'" *Id*. (quoting *Laxalt*, 809 F.2d at 888, 890). This test is similar to the one that is applicable under the common law right of access that I have applied above.

Moreover, in the context of this case in which all of the proceedings have been open and relevant materials—other than the descriptions of the contents of Abidor's laptop that resulted from the forensic search—have been made available, sealing the documents containing those

descriptions would not seem to undermine the considerations underlying the First Amendment presumptive right of access. The circumstances here are different from a case that involved the sealing of a complaint, which "leaves the public unaware that a claim has been leveled and that state power has been invoked—and public resources spent." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016). The same could not be said here. Moreover, unlike the documents at issue in *United States v. Erie County., N.Y.*, 763 F.3d 235 (2d Cir. 2014), this case does not involve the disclosure of documents in a settled case that, nevertheless, could form the basis of either judicial decisions or decisions of other public bodies in relation to actions taken or not taken in judicial proceedings relating to the enforcement of the settlement agreement. *Id.* at 243.

## CONCLUSION

The motion to keep the presently sealed documents under seal is granted.


**SO ORDERED.**

Brooklyn, New York
June 2, 2016

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge